**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Criminal Case No. 17-cr-00134-CMA-10

UNITED STATES OF AMERICA,

    Plaintiff,

v.

10. VICTOR HERNANDEZ,

    Defendant.

---

**ORDER REGARDING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS**

---

This matter is before the Court on Victor Hernandez's Motion to Dismiss the Indictment or, in the Alternative, for a Bill of Particulars. (Doc. # 570.) For the following reasons, the Court denies the Motion.

## I. THE INDICTMENT

The Indictment in this case charges Mr. Hernandez with two counts for his alleged role in a large drug conspiracy:

- Count 1: Conspiracy to Distribute and Possess with Intent to Distribute 280 grams or more of cocaine base (crack), and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(II)(ii) and 846. Among other things, this Count includes the dates of the offense (on or about and between February 1, 2016 and March 29, 2017); the location (within the State and District of Colorado and elsewhere); and the participants involved (all 22 Defendants).

- Count Thirty-Eight: Distribution and Possession with Intent to Distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(II)(ii). This Count also includes the date (January 31, 2017), location (Colorado), and participants (Mr. Hernandez and Co-Defendant Eduardo Estrada-Cortes).

## II. **MOTION TO DISMISS**

Mr. Hernandez alleges that the Government materially misrepresented the evidence against him to the Grand Jury and that, but for those misrepresentations, the Grand Jury would not have charged him. Mr. Hernandez accordingly moves for dismissal of the Indictment.

### A. LAW

The remedy of dismissal of indictment on basis of prosecutorial misconduct before grand jury is an extraordinary one. *United States v. Pino*, 708 F.2d 523, 530 (10th Cir. 1983). An indictment may be dismissed for prosecutorial misconduct only when it is flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment. *Pino*, 708 F.2d at 530; *see also United States v. Wright*, 667 F.2d 793, 795 (9th Cir. 1982). Indeed, "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant," *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988), and there is a "presumption of regularity" for grand jury proceedings. *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974).

## B. ANALYSIS

Much of the evidence in this case, including the evidence supporting the charges against Mr. Hernandez, stems from recorded phone calls and officer surveillance. Some of those calls took place between Mr. Hernandez and Co-Defendant Estrada-Cortes. Mr. Hernandez contends that the Government Agent misrepresented to the Grand Jury the content of these calls and the history of his relationship with Mr. Estrada-Cortes. Mr. Hernandez argues that the misrepresentations "clearly prejudiced" him because they were the only basis for the Indictment against him and that dismissal of the Indictment is warranted as a result. The Court disagrees.

Mr. Hernandez specifically takes issue with the following Agent testimony:

> [DISTRICT ATTORNEY] Through conversations, did you determine who Lalo was getting his drugs from?
>
> [AGENT] We did.
>
> Q. Who was that?
>
> A. Mr. Victor Hernandez who also goes by Chicho.
>
> Q. How did you determine that Victor Hernandez was the source of supply to Lalo?
>
> A. Based on the telephone communications that we intercepted and meetings that took place.
>
> Q. Okay. Can you show us who Chicho is on Grand Jury Exhibit 5?
>
> A. Mr. Victor Hernandez is this individual here.
>
> Q. Specifically, on January 31st of 2017, did you intercept communications over Eduardo Estrada-Cortes' phone regarding Chicho and what Chicho was going to supply him?
>
> A. We did intercept telephone calls between the two, yes.

Q. What, essentially, was the nature of the two calls between them?

A. They were talking about meeting at a location. It appeared that Estrada-Cortes already knew what Hernandez was talking about, and the two agreed to meet.

Q. Where did they agree to meet?

A. They just said, I'm over here, all right, and that was it.

Q. Did you use anything in order to determine where those two people were meeting?

A. We did. At that time, we started monitoring the GPS tracker located on Eduardo Estrada-Cortes' vehicle, tracked that vehicle, and investigators conducting surveillance followed the vehicle to the area of North Harlan Street and West First Avenue in Lakewood, Colorado. At that time, we observed Eduardo Estrada-Cortes park next to a van in the parking lot of a carniceria. The actual address on the carniceria was 5989 West First Avenue. Estrada-Cortes entered the business for a minute, he was by himself at that time, and he walked out of the business, accompanied by Mr. Hernandez. The two met briefly between the vehicles, and then Estrada-Cortes left the area.

Q. Did you or your investigative team take any steps after watching this brief meeting between Eduardo Estrada-Cortes and Victor Hernandez?

A. We did. We followed Mr. Estrada-Cortes, traffic infractions were observed, and a traffic stop was conducted on Eduardo Estrada-Cortes.

Q. Was a narcotics-odor-sniffing K-9 used on that vehicle?

A. It was.

Q. And what were the results of that sniff?

A. The K-9 indicated the presence of the odor of an illegal narcotic coming from inside the vehicle.

Q. So what did you do after the K-9 alerted to the vehicle?

> A. At that point, the vehicle was searched. Inside the vehicle, on the floorboard, in the rear of the truck, investigators located 1,059.1 grams of powder cocaine.
>
> Q. Is that over a kilo of cocaine?
>
> A. It's right at a kilo, yeah. It's just a little bit over.
>
> Q. And in the Denver metro area, at the time, what was the street value for a kilo of cocaine?
>
> A. Street-level value of a kilo of cocaine goes anywhere from 32,000 to 35,000.
>
> Q. If you can describe to the grand jury how you knew that Victor Hernandez, a/k/a Chico, was, in fact, the source to Lalo?
>
> A. Based on previous telephone calls. They didn't talk frequently, however, Mr. Hernandez would notify Estrada-Cortes when his sources of supply had arrived. Shortly after his sources had arrived — Mr. Hernandez's sources, that is — he would make telephone calls to Estrada-Cortes indicating and notifying him that his sources of supply had arrived. The two would agree to meet. Their conversations on the phone are extremely limited. However, just like in this call, they didn't give a location on where to meet, but they knew where to meet.
>
> Q. What does that indicate to you about their relationship?
>
> A. It indicates that they had an extremely close relationship and a trusting relationship.

(Doc. # 632 at 100–103.) According to Mr. Hernandez, this testimony is based in part on the Agent's interpretation of several phone calls between Mr. Hernandez and Mr. Estrada-Cortes. (Doc. # 570 at 6–9.) In those calls, which span over a week, Mr. Hernandez and Mr. Estrada-Cortes discuss meeting up and how Mr. Estrada-Cortes owes Mr. Hernandez significant amounts of money. Mr. Estrada-Cortes also asks Mr. Hernandez if he "can help him out," to which Mr. Hernandez responds "the guy is

arriving today or tomorrow." In a later call Mr. Hernandez tells Mr. Estrada-Cortes that he was "waiting for the guys" and that he would "let [Mr.] Estrada-Cortes know." Days following, they again discuss how Mr. Estrada-Cortes and others owe Mr. Hernandez money, who he, in turn, needs "to pay the guys." Mr. Estrada-Cortes then told Mr. Hernandez that there was "one that wanted to work" but that he realized he needed money first in order to give him "more." Other calls suggest and officer surveillance confirms that Mr. Estrada-Cortes and Mr. Hernandez did, indeed, meet up on at least one occasion.

The Court finds that the Government Agent did not commit flagrant or infringing misconduct when he summarized his findings and conclusions to the Grand Jury. His interpretation of the above-described calls as showing that Mr. Hernandez was the "source of supply" for Mr. Estrada-Cortes and that the two had a close and trusting relationship is not a flagrant misrepresentation. Instead, it is a reasonable interpretation that is supported by the calls themselves.

In large part, Defendant's motion reads like a challenge to the sufficiency of the Government's evidence and a disagreement about the Government's interpretation of the evidence. Mr. Hernandez may of course raise those concerns and present contrary evidence at trial, but such contentions are insufficient reasons to support dismissal of the Indictment at this time, particularly where there is no flagrant or prejudicial misconduct and, as will be explained below, the Indictment is facially sound. *See United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."); *Pino*, 708 F.2d at 530

("An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, or even on the basis of information."). Mr. Hernandez's request for dismissal is, therefore, denied.

### III. REQUEST FOR A BILL OF PARTICULARS

#### A. LAW

An indictment is held only to minimal constitutional standards, and the sufficiency of an indictment is judged "by practical rather than technical considerations." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir.1997). "An indictment is sufficient 'if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend and if it enables a defendant to assert an acquittal or conviction in order to prevent being placed in jeopardy twice for the same offense.'" *United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir. 1991) (quoting *United States v. Staggs*, 881 F.2d 1527, 1530 (10th Cir. 1989), cert. denied, 493 U.S. 1020 (1990)). In the Tenth Circuit, it is usually enough for the indictment to track the statute when the statute adequately expresses all of the elements to the offense. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988).

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir.) (quotation omitted), cert. denied, 519 U.S. 901 (1996). It serves to minimize the defendant's surprise to the substantive facts of the charges, not the evidentiary basis of the charge. *See Wong Tai v. United States*, 273 U.S. 77 (1927); *United States v. Hopkins*, 716 F.2d 739, 745 (10th Cir. 1982). "Unless the request for the bill of particulars shows, on its face, that failure to grant the request

would result in prejudicial surprise, the preclusion of an opportunity for meaningful defense preparation, [or double jeopardy problems,] defendant has the burden of showing [by brief, affidavit or otherwise] that his or her request meets one of the three criteria." *United States v. Anderson*, 31 F.Supp.2d 933, 938 (D. Kan. 1998) (citing *United States v. Wright*, 826 F.2d 938, 943 (10th Cir.1987) (alterations in original). The district court has broad discretion in deciding a motion for bill of particulars. *United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir.1992).

In exercising its discretion, the trial court must remain mindful of the parameters placed on a bill of particulars. Though it may provide more information, a bill of particulars is not intended to serve as a discovery device or to compel the government's disclosure of the factual proof planned for trial. *Dunn*, 841 F.2d at 1029. A defendant is not entitled to notice of "all the evidence the government intends to produce, but only the theory of the government's case." *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992). Nor is it a way to require the government's explanation of the legal theories expected at trial. *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983). Evidentiary detail is not a proper request for a bill of particulars. *United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir. 1980). A bill of particulars is not required where the information necessary for one's defense can be obtained through some other satisfactory form. *See United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir. 1995).

**B. ANALYSIS**

Mr. Hernandez requests a bill of particulars because, he contends, "neither the bare-boned allegations in the Indictment nor the discovery produced by the Government provide any factual or legal support for Mr. Hernandez's inclusion in Count 1 . . . or

Count 38 to enable the defense to prepare for trial, avoid surprise, and to impose a plea of double jeopardy." The Court disagrees that a bill of particulars is warranted.

With respect to Count One, the Court finds that the indictment clearly sets forth the essential elements of the conspiracy offense charged and provides Mr. Hernandez with sufficient notice of the charges against which he must defend. The Indictment specifies the beginning and concluding dates of the alleged conspiracy, defines the nature of the conspiracy, states the agreement of the conspirators, describes the location of the conspiracy, names the co-conspirators, and identifies the specific controlled substance involved. This information is sufficient; indeed, an indictment for conspiracy to distribute and possess with the intent to distribute controlled substances "need not go further and allege 'in detail the factual proof that will be relied upon support the charges,'" *Dunn*, 841 F.2d at 1029, nor must it allege "any specific overt acts in furtherance of a conspiracy," *United States v. Brown*, 934 F.2d 886, 889 (7th Cir. 1991).

With respect to Count Thirty-eight, the Court also finds that the Indictment is sufficient. It clearly sets forth the essential elements of the offense charged and provides Mr. Hernandez with adequate notice of the charges against which he must defend. The Count specifies the date of the offense, the nature of the offense, the location of the offense, the participants, and the type and quantity of controlled substance involved.

Moreover, Mr. Hernandez acknowledges that the Government has provided him voluminous discovery in this case. According to the Government, that discovery includes grand jury transcripts, affidavits for seventeen wiretaps, which detail precise dates and participants in the calls, "as well as a summary of the nature of the call and

law enforcement's interpretation of the call, attempted and successful controlled purchases, observations made by surveillance officers, and information provided by cooperating sources." (Doc. # 629 at 11.) Pursuant to well-established Tenth Circuit law, once the Government provides "complete discovery containing sufficient information to allow [the defendant] to prepare [his] defense," it thereby provides him with "the tools necessary to anticipate and forestall any surprise that might have resulted from the indictment." *United States v. Ivy*, 83 F.3d 1266, 1282 (10th Cir. 1996). It is thereafter defendant's "responsibility to use [those tools] in preparing [his] defense, regardless of whether the discovery [is] copious and the preparation of the defense [is] difficult." *Id; United States v. Serrano-Serrano*, No. 2:16-CR-56-RJS-PMW, 2016 WL 7217632, at *2 (D. Utah Dec. 13, 2016).

The Court is accordingly satisfied that the information contained in Counts One and Thirty-Eight of the Indictment meets the minimal due process standards such that no bill of particulars is warranted.

## IV. CONCLUSION

Based on the foregoing reasons, the Court DENIES Defendant Victor Hernandez's Motion. (Doc. # 570.)

DATED: February 15, 2018          BY THE COURT:

*Christine M. Arguello*

CHRISTINE M. ARGUELLO
United States District Judge